**MILSTEIN ADELMAN, LLP**
Gillian L. Wade, (State Bar No. 229124)
gwade@maklawyers.com
Stephanie Mazepa, State Bar No. 263070
smazepa@milsteinadelman.com
Michael I. Miller, (State Bar No. 266459)
imiller@maklawyers.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone:   (310) 396-9600
Fax:              (310) 396-9635

**GOLOMB & HONIK, P.C.**
Richard M. Golomb (PA Bar No. 42845)
RGolomb@golombhonik.com
Ruben Honik (PA Bar No. 33109)
RHonik@golombhonik.com
Kenneth J. Grunfeld (PA Bar No. 84121)
KGrunfeld@golombhonik.com
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Telephone:   (215) 985-9177
Fax:              (215) 985- 4169

**LIEFF, CABRASER, HEIMANN & BERNSTEIN**
Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
Allison Elgart (State Bar No. 241901)
aelgart@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94114
Telephone:  (415) 956-1000
Fax:              (415) 956-1008

Rachel Geman (NY Bar No. 0998)
rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:   (212) 355-9500
Fax:              (212) 355-9592

Attorneys for Plaintiff
Negin Zarandi and the Proposed Class

//

//

//

//

//

//

1  //

2  //

3  //

4  //

5  //

6  //

7  //

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEGIN ZARANDI, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>            vs.<br><br>ALLIANCE DATA SYSTEMS CORPORATION, a Delaware Corporation, and WORLD FINANCIAL NETWORK NATIONAL BANK, a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No. 2:10-cv-08309-DSF (JCGx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS ALLIANCE DATA SYSTEMS CORPORATION AND WORLD FINANCIAL NETWORK NATIONAL BANK'S MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**<br><br>Date:        February 28, 2011<br>Time:        1:30 P.M.<br>Courtroom:    840<br>Judge:        Hon. Dale S. Fischer |

## <u>TABLE OF CONTENTS</u>

I. SUMMARY OF ARGUMENT ........................................................................1

II. FACTUAL BACKGROUND .......................................................................2

    A.    Arbitration Provisions Were Not Provided To Plaintiff Prior To Or At
        The Time She Signed Up For The Mastercard ....................................2

    B.    Arbitration Provisions Were Not Provided To Plaintiff Prior To Or At
        The Time She enrolled In The Payment Protection Plan .....................2

    C.    The Payment Protection Plan Failed to Make Plaintiff's Required
        Payments Despite Plaintiff's Payment Of All Fees .............................4


III.  LEGAL ARGUMENT ..............................................................................5

    A.    DEFENDANTS HAVE FAILED TO MEET THEIR
        BURDEN THAT A VALID ARBITRATION
        AGREEMENT EXISTS .......................................................................6

            1. Failure to Affirmatively Opt Out of Arbitration
            Provisions Does Not Amount to Acceptance to Being
            Bound by an Arbitration Agreement .............................................8

    B.    WFNNB'S ARBITRATION PROVISIONS ARE
        UNCONSCIONABLE AND UNENFORCABLE ............................10

            1. California Law Governs This Case .......................................11

                a.  Ohio Does Not Have A Substantial Relationship
                    To the Parties or The Transaction..................................12

                b.  California Has A Materially Greater Interest
                    In Protecting Its Citizens from Fraud and
                    Deceptive Business Practices .......................................12

                c.   Ohio Law Conflicts With Fundamental
                    Policies of California....................................................13

2. WFNNB's Arbitration Provisions Are Unconscionable and Unenforceable Under California Law ....................................15

    a. Defendants' Arbitration Provisions Are Procedurally Unconscionable ............................................................15

    b. Defendants' Arbitration Provisions Are Substantively Unconscionable ............................................................17

3. WFNNB's Arbitration Provisions Are Also Unconscionable and Unenforceable Under Ohio Law ..........20

    a. The Arbitration Provisions Are Not Severable and Therefore All the Arbitration Provisions Are Unenforceable ............................................................21

C. IF ARBITRATION IS ORDERED THIS COURT SHOULD BIFURCATE AND GRANT PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF ....................................................22

IV. CONCLUSION .........................................................23

# TABLE OF AUTHORITIES

<u>FEDERAL CASES</u>

*Acorn v. Household Int'l, Inc.,* (N.D. Cal. 2002)
    211 F.Supp.2d 1160.................................................................14

*Amchem Prods., Inc. v. Windsor,* (1997)
    521 U.S. 591 ........................................................................18

*AutoNation USA Corp. v. Leroy,* (Tex. App. 2003)
    105 S.W.3d at 190 ................................................................17

*Broughton v. Cigna Health Plans of California*, (Cal. 1999)
    988 P.2d 67 ..........................................................................22

*Cazares v. Pacific Shore Funding*, (C.D. Cal. Jan. 3, 2006)
    No. 04-2548, WL 149106, at *1 ...........................................13

*Cervantes v. Pacific Bell Wireless*, (S.D. Cal. Mar. 8, 2006)
    WL 708936 No. 05-1469......................................................13

*Chiron Corp. v. Ortho Diagnostic Sys.,* (9th Cir. 2000)
    207 F.3d 1126 ........................................................................6

*Circuit City Stores v. Ahmend,* (9th Cir. 2002)
    294 F.3d 1104 ....................................................................8, 9

*Circuit City Stores v. Hajd,* (2002)
    283 F.3d 1198 ....................................................................8, 9

*Circuit City Stores, Inc. v. Mantor, (9th Cir 2003)*
    335 F.3d at 1101 ..................................................................21

*Comb v. Paypal, Inc*., (N.D. Cal. 2002)
    218 F.Supp.2d 1165..............................................................21

*Comer v. Micor, Inc.*, (9th Cir. 2006)
   436 F.3d 1098 ...................................................................................**7**

*Daisy Mfg. Co. v. NCR Corp.*, (8th Cir. 1994)
   29 F.3d 389 ......................................................................................**7**

*Deposit Guar. Nat'l Bank v. Roper*, (1980)
   445 U.S. 326 ...................................................................................17

*Diamond Multimedia Sys., Inc. v. Superior Court*, (Cal. 1999)
   968 P.2d 557 ...................................................................................12

*Discover Bank v. Superior Court*, (Cal. 2005)
   113 P.3d 1100 ................................................................1, 16, 18, 22

*Doctor's Assocs., Inc. v. Casarotta*, (1996)
   517 U.S. 681 ...................................................................................10

*Douglas v. U.S. Dist. Ct. for the Cent. Dist. Of California*, (9th Cir. 2007)
   495 F.3d 1062 ...................................................................................8

*Eisen v. Carlisle*, (1974)
   417 U.S. 156 ...................................................................................17

*FIA Card Servs., N.A. v. Cohen*, (N.J. Super. A.D. June 17, 2009)
   2009 WL 1675533, at *1 .............................................................16

*Fleetwood Enters., Inc. v. Gaskamp*, (5th Cir. 2002)
   280 F.3d 1069 .................................................................................**7**

*Gilmer v. Interstate/Johnson Lane Corp.*, (1991)
   500 U.S. 20 ......................................................................................7

*Gentry v. Superior Court*, (2007)...................................................17
   42 Cal. 4th 443

*Green Tree Financial Corp. – Alabama v. Randolph*, (2000)
   531 U.S. 79 .....................................................................................18

*Hoffman v. Cingular Wireless, LLC,* (S.D. Cal. Oct. 26, 2006)
2006 U.S. Dist. LEXIS 79067 No. 06-1021 ..................................................13

*Ingle v. Circuit City Stores, Inc.*, (9th Cir. 2003)
328 F.3d 1165 ..................................................................................................17

*In Re American Express Merchants Litig.*, (2d. Cir. 2009)
554 F.3d 300 ....................................................................................................20

*In Re Apple & AT&TM Antitrust Litig.*, (N.D. Cal. 2008)
596 F.Supp.2d 1288 ........................................................................................13

*In re Charter Co.,* (11th Cir. 1989)
876 F.2d 866 ....................................................................................................18

*Janda v. T-Mobile, USA, Inc.*, (N.D. Cal. Mar. 17, 2006)
WL 708936 No. 05-3729 ................................................................................13

*Kaltwasser v. Cingular Wireless, LLC,* (N.D. Cal. Nov. 3, 2008)
543 F.Supp.2d 1124 ..................................................................................16, 17

*Keating v. Superior Court,* (Cal. 1982)
645 P.2d 1192 ..................................................................................................22

*Kinkel v. Cingular Wireless, LLC, (2006)*
223 111. 2d1, 857 N.E.2d at 250 ....................................................................19

*Kristian v. Comcast Corp.*, (1st Cir. 2006)
446 F.3d 25 ................................................................................................18, 21

*Laster v. AT &T Mobility LLC,* (9th Cir. 2009)
584 F.3d 849 ............................................................................................13, 16

*Mastrobuono v. Shearson Lehman Hutton,* (1995)
514 U.S. 52, 63 ..............................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, (1983)
460 U.S. 1 ..........................................................................................................7

*Nagrampa v. MailsCoups, Inc.*, (9th Cir. 2006)
    496 F.3d 1257 .........................................................................15, 16

*Par-Knit Mills, Inc. v. Stockbrideg Fabrics Co.*, (3d Cir. 1980)
    636 F.2d 51 .......................................................................................6

*Perry v. Thomas*, (1987)
    482 U.S. 483 ...............................................................................7, 10

*Republic of Nicaragua v. Standard Fruit Co.*, (9th Cir. 1991)
    937 F.2d 469 ....................................................................................7

*Santoas v. Household International, Inc.*, (N.D. Cal. Oct. 24, 2003)
    2003 WL 25911112 No. C03-1243 ................................................9

*Shroyer v. New Cingular Wireless Servs., Inc.*, (9th Cir. 2007)
    498 F.3d 984 .......................................................................14, 16, 18

*Simula, Inc. v. Autoliv, Inc.*, (9th Cir. 1999)
    175 F.3d 716 ....................................................................................6

*Skirchak v. Dynamics Research Corp.*, (1st Cir. 2007)
    508 F.3d 49 ....................................................................................16

*Southland Corp. v. Keating*, (1984)
    465 U.S. 1 ......................................................................................22

*Steiner v. Apple Computers, Inc.*, (N.D. Cal. 2008)
    556 F.Supp.2d 1016......................................................................13

*Stern v. Cingular Wireless Corp.*, (C.D. Cal. 2006)
    453 F.Supp.2d 1138......................................................................13

*Stout v. J.D. Byrider*, (6th Cir. 2000)
    228 F.3d 709 ..................................................................................21

*Three Valleys Mun. Water Dist. V. E.F. Hutton & Co., Inc.*, (9th Cir. 1991)
    925 F.2d 1136 .................................................................................6

*Ticknor v. Choice Hotels Int'l, Inc.,* (9th Cir. 2001)
  265 F.3d 931 ................................................................................7, 10

*Ting v. AT&T,* (Cal. Ct. App. 2002)
  319 F.3d at 1126 .........................................................................14, 17

*United Steelworkers of Am. V. Bell Foundry Co.,* (9th Cir. 1980)
  626 F.2d 139 ......................................................................................7

*Washington Mutual Bank, F.A. v. Superior Court,* (2001)
  15 P.3d 1071 ....................................................................................11

*Winig v. Cingular Wireless, LLC,* (N.D. Cal. Sept. 27, 2006)
  2006 WL 2766007 No. 06-4297 ......................................................13

*Zinser v. Accufiz Research Inst., Inc.,* (9th Cir. 2001)
  253 F.3d 1180 ..................................................................................11


<u>STATE CASES</u>

*America Online (AOL) v. Superior Court,* (2001)
  108 Cal.Rptr.2d 699.....................................................................11, 13

*Application Group, Inc. v. Hunter Group, Inc.,* (1998)
  61 Cal.App.4[th] 881 .........................................................................12

*Application Group, Inc. v. Hunter Group, Inc.,* (Cal. Ct. App. 1998)
  72 Cal.Rtpr.2d 73...........................................................................11

*Aral v. Earthlink, Inc.,* (2005)
  134 Cal.App.4[th] 544........................................................................13

*Baker v. Osborne Development Corp.,* (Cal. Ct. App. 2008)
  159 Cal.App.4[th] 884........................................................................16

*Beatty Safeway Scaffold, Inc. v. Skrable,* (Ct. App. 1960)
  180 Cal.App.2d 650..........................................................................8

*Bradberry v. T-Mobile USA, Inc.*, (N.D. Cal. Apr. 27, 2007)
    2007 WL 1241936 No. 06-6567 ....................................................................13

*Cal-State Bus. Prods. & Servs. V. Ricoh*, (1993)
    12 Cal. App. 4th 1666 ..................................................................................11

*Cione v. Foresters Equity Servs.*, (1997)
    58 Cal.App.4th 625 ........................................................................................6

*Golden Eagle Ins. Co v. Foremost Ins. Co.*, (Ct. App. 1993)
    20 Cal.App.4th 1372 ......................................................................................8

*Klussman v. Cross Country Bank*, (2005)
    134 Cal.App.4th 1298 .........................................................................3, 12, 13

*Miller v. Household Realty Corp.*, (Ohio Ct. App. June 26, 2003)
    2003 WL 21469782, at *7 No 81968 ......................................................20, 21

*Nedllyod Lines B.V. v. Superior Court*, (1992)
    3 Cal.4th 459 ...............................................................................................11

*Szetela v. Discover Bank*, (2002)
    97 Cal.App.4th 1094 ....................................................................................14

*Williams v. Aetna Finance Company,* (1998)
    83 Ohio St.3d 464 ........................................................................................21

## FEDERAL STATUTES

9 U.S.C. §1 .........................................................................................................6
9 U.S.C. §2 .......................................................................................................10

## STATE STATUTES

*Cal. Civ. Code*
    § 1668 .............................................................................................13, 14

*Civ. Code*
    § 1670.5 ...........................................................................................14, 15

*Civ. Code*
§ 3513 ...................................................................................................14

*Restatement (Second) of Conflict of Laws*
§ 187 ...................................................................................................11
§ 188 .....................................................................................................3


OTHER SOURCES

1 Witkin, Summary of Cal. Law (10th ed. 2005)
§ 75 .......................................................................................................3

Plaintiff Negin Zarandi ("Plaintiff"), on behalf of herself and all others similarly situated (the "Class"), submits this memorandum in opposition to Defendants Alliance Data Systems Corporation ("Alliance Data") and World Financial Network National Bank's ("WFNNB") (collectively referred to as "Defendants") motion to compel individual, non-class arbitration and to stay all proceedings (the "Motion").

## I.   SUMMARY OF ARGUMENT

Plaintiff respectfully requests that the Court deny Defendants' Motion to Compel individual arbitration and enforce their class action waiver clause.  The Court should deny Defendants' Motion because there is no valid binding arbitration agreement between the parties and even if there were a meeting of the minds agreeing to arbitration, Defendants' arbitration provisions are unconscionable and unenforceable.

Defendants' attempt to impose their arbitration and class action waiver provisions exemplifies the situation addressed in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005), where a sophisticated institution with superior bargaining power exercised that power for the purpose of cheating large numbers of consumers out of individual small sums of money and insulating itself from its own fraud.  Under California law, it is clear that such arbitration provisions and anti-class action clauses are unconscionable on their face and in their application

Not only do Defendants impose the small-print contract on their customers on a take-it-or-leave-it basis, but the class action waiver has an exculpatory effect, shielding Defendants from liability when their unlawful conduct causes injuries too small to justify consumers' pursuit of individual actions or arbitrations. These arbitration provisions are an attempt to inoculate themselves from liability for their own willful scheme to defraud consumers.  The Ninth Circuit has repeatedly voided class action waivers as unconscionable.  Though California law applies to Plaintiff's unconscionability defense, the provisions in question should be struck whether

California or Ohio law applies.

Moreover, Plaintiff's claims for injunctive relief, such as those under the California Consumer Legal Remedies Act ("CLRA") and California's Unfair Competition Law ("UCL"), are not arbitrable. Despite Defendants' unenforceable prohibition against class-wide arbitration, this Court may nonetheless order class-wide arbitration.  Thus, at the very least, if this Court is inclined to order this case to arbitration, it should bifurcate the case and hear an injunctive relief action and order a class-wide arbitration on damages.

## II.   FACTUAL BACKGROUND

### A.   Arbitration Provisions Were Not Provided To Plaintiff Prior To Or At The Time She Signed Up For The Mastercard

Plaintiff signed up for an Ann Taylor Loft Mastercard ("Mastercard") issued by WFNNB in 2008, while shopping at an Ann Taylor retail store in Los Angeles, California.  *See* Plaintiff Negin Zarandi's Declaration In Support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration and Stay All Proceedings ("Zarandi Decl." ¶4).  Plaintiff was pre-approved for the Mastercard at the Ann Taylor store and was able to use the credit card on the spot to pay for her purchases.  (Zarandi Decl. ¶6).  Prior to signing up for and using the Mastercard, Plaintiff was not provided with written terms or conditions relating to her use of the Mastercard.  (Zarandi Decl. ¶¶7-8).  Nor were any specific terms relating to her use of the Mastercard verbally explained to her prior to her signing up for and using the Mastercard.  (Zarandi Decl. ¶9).  At no point prior to or during the signing process was Plaintiff made aware that her rights in relation to the Mastercard could be subject to binding individual arbitration.  (Zarandi Decl. ¶¶4-9).

### B.   Arbitration Provisions Were Not Provided to Plaintiff Prior to Or At The Time She Enrolled In The Payment Protection Plan

Weeks after Plaintiff signed up for and used the Mastercard, she received in the mail the physical Mastercard, a letter stating she must activate the card and a multiple

page, single-spaced, small print pamphlet that she believes was the Mastercard agreement.  (Zarandi Decl. ¶¶10-11).[1]  During the call to activate the Mastercard, the Mastercard representative on the phone asked if Plaintiff would like to enroll in a Payment Protection plan.  (Zarandi Decl. ¶12).  The Payment Protection plan was marketed to her as a service that would suspend or cancel her minimum monthly payment due on her Mastercard account and would excuse her from paying the monthly interest charge and the Payment Protection plan fee for a limited period of time in the event she became unemployed or disabled.  (Zarandi Decl. ¶13).

At no time during the activation call was Plaintiff informed about the numerous and complicated limitations, exclusions and restrictions that might bar her from receiving the benefits of the Payment Protection plan even if she diligently paid the monthly fees required for the service.  (Zarandi Decl. ¶13).  At no time during the activation call did the Mastercard representative inquire if Plaintiff was currently unemployed or disabled and thus ineligible for the Payment Protection plan benefits. (Zarandi Decl. ¶14).  Further, at no time during the activation call was Plaintiff informed that the terms and conditions applying to enrollment in the Payment Protection plan were controlled by the previously entered into and separate terms and conditions in the Mastercard Agreement.  (Zarandi Decl. ¶15). To her knowledge, Plaintiff has never received any written terms or agreement of any kind in relation to the Payment Protection plan.  (Zarandi Decl. ¶17).  Plaintiff was never informed that any potential future claims she might have concerning the Mastercard account and the

---

[1] Plaintiff's phone call activating the physical Mastercard is not the moment when she "signed up for" or agreed to be bound by the terms of Mastercard Agreement, as described in section 3 of the agreement.  Plaintiff "signed up for" and used the Mastercard on the day she filled out the credit card pre-approval form at the Ann Taylor Store and thus this is the relevant time period to consider when and if Plaintiff contractually agreed to be bound by the arbitration provisions.  The place of contracting is the place of occurrence of the last act necessary to give the contract binding effect. *See Klussman v. Cross Country Bank*, 36 Cal. Rptr.3d 728, 740 (Cal. Ct. App. 2005) (citing 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts § 75, at 122 and Restatement § 188, com. E, at 579).  Plaintiff's use of the Mastercard on the day she was approved was the necessary "last occurrence" which took place in California.

Payment Protection plan would be subject to binding individual arbitration.  (Zarandi
Decl. ¶16).

At no point prior to agreeing to enrollment in the Payment Protection plan did
Plaintiff agree to submit any potential future claims she might have to arbitration and
Plaintiff has no recollection of giving up her right to go to court.  (Zarandi Decl. ¶¶18-
19).  The term arbitration was never mentioned.  (Zarandi Decl. ¶¶4-19).  Further,
Plaintiff's damages are too small for her to justify the effort and expense of individual
litigation or arbitration.

Thus prior to and during the sign-up process at the Ann Taylor store, Plaintiff
did not agree to any arbitration provision, nor was she aware that she might be
consenting to a loss of significant legal rights by agreeing to arbitration of any
potential future claims.  Further, prior to and during the enrollment process for the
Payment Protection plan, Plaintiff did not agree to any arbitration provision, nor was
she aware that she might be consenting to a loss of significant legal rights by agreeing
to arbitration of any potential future claims she might have.  Defendants contend that
Plaintiff was sent an "Important Notice" ("Notice") in December 2009 that changed
the arbitration provisions applicable to her Mastercard account.  *See* Declaration of
Andrea K. Dent In Support of Defendants' Motion to Compel Arbitration and Stay All
Proceedings ¶¶9-10.[2]  Plaintiff does not recall receiving such Notice.  (Zarandi Decl.
¶20).  Defendants have failed to submit any admissible evidence that such Notice was
actually sent to Plaintiff and certainly have not proved Plaintiff actually received this
Notice that significantly affects her legal rights.

C.    **The Payment Protection Plan Failed to Make Plaintiff's Required
Payments Despite Plaintiff's Payment Of All Fees**

Plaintiff became unemployed approximately three to four months after enrolling

---

[2] Filed concurrently with this Memorandum are Plaintiff's Evidentiary Objections to the Dent
Declaration in which Plaintiff disputes the authenticity, validity, reliability, and admissibility of the
Dent Declaration.  As such, this Court should not consider the Dent Declaration for proof of the truth
of the matters asserted therein.

in the Payment Protection plan.  (Zarandi Decl. ¶ 22).  Plaintiff contacted Mastercard
and Account Assure Pro to request that her Payment Protection plan benefits become
activated.  (Zarandi Decl. ¶23).  She received a letter from Account Assure Pro stating
that she needed to be unemployed for 30 consecutive days to be eligible for the
Payment Protection plan benefits and was required to submit a form that was enclosed
in the letter and the documentation that the form requested.  (Zarandi Decl. ¶24).
After Plaintiff was unemployed for 30 consecutive days she mailed the completed and
signed form to Account Assure Pro.  (Zarandi Decl. ¶25).  Afterwards, Plaintiff
repeatedly called Account Assure to inquire when her benefits would start to apply,
but she received no information when this would occur.  (Zarandi Decl. ¶26).

Account Assure Pro made a few partial payments on Plaintiff's monthly
minimum balance on her Mastercard account and then never made any additional
payments even though Plaintiff continued to be unemployed and paid the monthly
Payment Protection plan fee.  (Zarandi Decl. ¶¶27-30).  Due to Account Assure Pro's
failure to make the required minimum monthly payments, WFNNB placed Plaintiff's
account in default and terminated her ability to use the credit card. (Zarandi Decl.
¶32). Further, after Defendants did not reply to Plaintiff's numerous attempts at
contacting them to figure out why she was not receiving the Payment Protection plan
benefits she paid for and why her Mastercard was terminated, she contacted the
California Better Business Bureau to file a complaint against Account Assure Pro,
WFNNB, and any other companies involved in the deceptive marketing and sale of
the Payment Protection plan.  *See* Complaint ¶ 50.  During the time Plaintiff was
trying to resolve her dispute with the Defendants and contacted the California Better
Business Bureau, no employee, representative or agent of the Defendants informed
Plaintiff that she would have to initiate individual arbitration to resolve her disputes.
(Zarandi Decl. ¶33).

## III.   <u>LEGAL ARGUMENT</u>

## A.   DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN THAT A VALID ARBITRATION AGREEMENT EXISTS

As a threshold matter, Defendants have failed to meet their burden of showing that Plaintiff agreed to resolve any and all of her claims relating to her Mastercard account and the Payment Protection plan through binding individual arbitration. Absent such a showing, this Court need not proceed any further.

The "first principle" of arbitration is "a party cannot be required to submit [to arbitration] any dispute which he has not agreed to submit." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc*., 925 F.2d 1136, 1141 (9th Cir. 1991) (the party seeking to compel arbitration bears the burden of proving the existence and validity of an agreement to arbitrate). The Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq,* "does not apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation, and the enforcement of contracts generally." *Cione v. Foresters Equity Servs*., 58 Cal.App.4th 625, 634 (1997).

The Court's initial role in the arbitration motion process is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000): *Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 719-20 (9th Cir. 1999). In determining a motion to compel arbitration, a court will apply a standard similar to that of a motion for summary judgment, and will compel arbitration "[o]nly when there is no genuine issue of fact concerning the formation of the agreement." *Three Valleys Mun. Water Dist*., 925 F.2d at 1141 (*quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co*., 636 F.2d 51, 54 (3d Cir. 1980)). Moreover, "[t]he district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate has been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id*.

1   While the FAA reflects a federal policy favoring arbitration agreements (*Gilmer*

2   *v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)), this presumption does not

3   apply to the determination of whether there is a valid agreement to arbitrate between

4   the parties." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1004 n.11 (9th Cir. 2006) (*quoting*

5   *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) and *Daisy*

6   *Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994)).  The FAA creates "a body

7   of federal substantive law of arbitrability, applicable to any arbitration agreement

8   within coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

9   460 U.S. 1, 24 (1983).  This body of federal law also required courts to apply state

10  law, "If that law arose to govern issues concerning the validity, revocability and

11  enforceability of contracts generally."  *Perry v. Thomas*, 482 U.S. 483, 493 fn.9

12  (1987); *see also Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 941 (9th Cir.

13  2001).

14  Under both state contract and federal common law principles, a "prerequisite of

15  any contract is mutual assent or a meeting of the minds."  *United Steelworkers of Am.*

16  *v. Bell Foundry Co.*, 626 F.2d 139, 141 (9th Cir. 1980).  In determining whether to

17  issue an order compelling arbitration pursuant to federal law the court must determine

18  "whether there exists a valid agreement to arbitrate."  *Republic of Nicaragua v.*

19  *Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991).

20  Defendants have failed to carry their burden of proof that Plaintiff was ever

21  presented with or given a meaningful opportunity to review, negotiate or agree to the

22  arbitration provisions relating to the Mastercard agreement and the Payment

23  Protection plan prior to signing up for and using her Mastercard.  Given that Plaintiff

24  was never presented with or even aware of these arbitration provisions that

25  significantly affect and constrict her legal rights, Defendants cannot prove that a

26  contractually valid "meeting of the minds" occurred.  Therefore, no valid arbitration

27  agreement exists between the parties and Defendants' Motion should be denied.

28

1      **1.      Failure to Affirmatively Opt Out of Arbitration Provisions Does Not**

2      **Amount to Acceptance to Being Bound by an Arbitration Agreement**

3            Even though Plaintiff was not presented with the Mastercard agreement until

4      weeks after she signed up for and used the card, Defendants' contend Plaintiff's

5      failure to affirmatively opt out of the arbitration provision is evidence Plaintiff agreed

6      to be bound by arbitration provisions that mandate binding individual arbitration.

7      Defendants also argue Plaintiff's failure to affirmatively opt out of the Notice

8      arbitration provisions is an indication she "confirmed" her agreement to arbitration,

9      though there is zero evidence that Plaintiff received this Notice.[3]

10           Plaintiff's silence or failure to affirmatively object to an arbitration provision

11     she was unaware of does not amount to assent to be controlled by the arbitration

12     provisions.  "As a general rule, silence or inaction does not constitute acceptance of an

13     offer."  *Golden Eagle Ins. Co v. Foremost Ins. Co.*, 20 Cal.App.4th 1372 (Cal. Ct.

14     App. 1993).  Though, "where circumstances or the previous course of dealing between

15     the parties places the offeree under a duty to act or be bound, his silence or inactivity

16     will constitute his assent."  *Beatty Safeway Scaffold, Inc. v. Skrable*, 180 Cal.App.2d

17     650 (Cal. Ct. App. 1960).  Defendants fail to provide any evidence that the

18     circumstance in this matter or the previous dealings of the parties places a duty upon

19     Plaintiff to affirmatively request that the arbitration provisions in Defendants'

20     standard contract not apply to her.

21           Defendants cite cases such as *Circuit City Stores v. Ahmend*, 294 F.3d 1104,

22     1109 (9th Cir. 2002), and *Circuit City Stores v. Najd* 283 F.3d 1198 (9th Cir. 2002) to

23     support their argument that Plaintiff's silence creates acceptance of the Defendants'

24

25     _____

       [3] Defendants' Notice was merely an offer and not a revised binding agreement until Plaintiff
26     accepted the terms.  *See Douglas v. U.S. Dist. Ct. for the Cent. Dist. Of California*, 495 F.3d 1062,
       1066 (9th Cir. 2007).  Again, Defendants have failed to provide any evidence that Plaintiff received
27     the Notice and agreed to its terms, therefore there is no binding arbitration agreement based on the
       Notice.  "[A] party can't unilaterally change the terms of a contract; it must obtain the other party's
28     consent before doing so."  *Id.*

1    arbitration provisions.  However, these cases are inapposite.  In *Najd*,[4] the parties
2    "were not two typical parties contracting at arm's length"; the plaintiff-employee,
3    Najd, acknowledged receipt of the dispute resolution agreement in writing; he had an
4    "explicit opportunity to review the agreement with an attorney"; Circuit City
5    communicated in detail and in writing the effect of Najd's acceptance of the
6    agreement on his right to bring claims against his employer; he had thirty days to
7    review the agreement and decide whether to opt out; and Circuit City made clear that
8    opting out of the agreement would have no effect on the employment relationship.  *Id*.

9        Here, Plaintiff and the Defendants were "contracting at arm's length," did not
10   have prior dealings with each other; Plaintiff did not acknowledge receipt of the
11   arbitration provisions in writing; Plaintiff certainly did not have an "explicit
12   opportunity to review with the agreement with an attorney"; Plaintiff contends that
13   Defendants did not communicate in detail and in writing the effect that Plaintiff's
14   silence would have on  her right to bring claims against the Defendants; Plaintiff was
15   not afforded thirty days to review the agreement and decide whether to opt out, and
16   opting out of the arbitration agreement would effect Plaintiff's ability to use the
17   Mastercard.  WFNNB's Mastercard Agreement states "If you notify us…that you do
18   not accept the binding Arbitration Provisions contained in this Agreement, you can
19   continue to use your card(s) under your existing terms until the end of your current
20   membership year or the expiration date on your card(s), whichever is later…[a]t that
21   time your account will be closed."[5]

22       Defendants' reliance on *Santoas v. Household International, Inc.*, No. 03-1243,
23   2003 WL 25911112, at *1 (N.D. Cal. Oct. 24, 2003) is also misplaced. The plaintiff in

24
25   [4] The Ninth Circuit Court also based its decision in *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198
     (2002) on circumstances very different from those present in this matter, but very similar to those in
26   *Circuit City v. Najd*.

27   [5] As previously discussed the terms of the Notice were an offer that was never accepted by the
     Plaintiff and Defendants cannot unilaterally change the agreement.  Hence, Defendants' references
28   to the slightly altered terms in the Notice are irrelevant.

1   *Santoas* had "ample time to look over the contract and decide whether she should

2   enter into it."  Based on Nevada law the court found the agreement was not

3   procedurally unconscionable.

4         Here, Plaintiff did not have a duty to act and cannot be bound by her "silence or

5   inactivity."  Plaintiff's failure to affirmatively opt out of the arbitration provisions

6   does not amount to an acceptance of the arbitration provisions.

7         **B.**    **WFNNB'S ARBITRATION PROVISIONS ARE**

8                      **UNCONSCIONABLE AND UNENFORCEABLE**

9         The U.S. Supreme Court has recognized that the FAA does not preempt the

10   unconscionability defense to enforcement of a contractual arbitration provision.

11   Under Section 2 of the FAA, a court may decline to enforce an arbitration agreement

12   based upon "generally applicable contract defenses, such as fraud, duress or

13   unconscionability."  *Doctor's Assocs., Inc. v. Casarotta*, 517 U.S. 681, 686-87 (1996)

14   (citing 9 U.S.C. §2).  The FAA thus sanctions the practice of invalidating arbitration

15   provisions that are found by a court to be oppressive or unconscionable.  The body of

16   federal law the FAA creates requires that federal courts apply state law, "whether of

17   legislative or judicial origin [ ] if that law arose to govern issues concerning the

18   validity, revocability and enforceability of contracts generally."  *Perry v. Thomas*, 482

19   U.S. 483, 493 fn.9 (1987); *see also Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931,

20   941 (9th Cir. 2001).  The applicable state law in this matter is California.  Defendants'

21   Motion states in a footnote that due to the choice of law provision in the Mastercard

22   Agreement Ohio law should apply where state law is addressed.[6]  Despite that, the

23   choice of law provision in the Mastercard Agreement, California law applies here.

24   Defendants have failed to meet their burden that the law of California, the forum state,

25   does not apply.

---

26   [6] The Notice, which Defendants heavily rely upon for other arguments, states the "Agreement is
governed by the laws of the state in which the WFNNB main office is located."  In 2010 WFNNB

27   moved headquarters to Delaware, which demonstrates that even Defendants do not apply all terms of
the Notice to the Mastercard Agreement and/or are also confused by the conflicting terms in the two

28   documents.  *See Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63 (1995) (any ambiguity
as to the choice of law selection in an arbitration clause should be construed against the drafter).

1    **1.    <u>California Law Governs This Case</u>**

2        California law presumptively applies to claims filed in California and the party

3    invoking foreign law bears the burden of establishing its application.  *See Zinser v.*

4    *Accufiz Research Inst., Inc.* 253 F.3d 1180, 1187 (9th Cir. 2001), amended by 273

5    F.3d 1266 (9th Cir. 2001); *Washington Mutual Bank, F.A. v. Superior Court*, 15 P.3d

6    1071, 1080 (2001).  Further, "the CLRA mandates a departure from the general rule

7    which normally places the burden of proving unfairness or unreasonableness of

8    the…clause on the party opposed to its enforcement," and assigns that burden to the

9    party seeking to enforce it.  *America Online (AOL) v. Superior Court*, 108 Cal.Rptr.2d

10    699, 705-06 (2001).  Defendants claim their choice of law clause, requires application

11    of Ohio law. Therefore, Defendants must establish that applying Ohio law would not

12    diminish the rights afforded plaintiffs by California law.

13        *Restatement (Second) of Conflict of Laws* § 187 (1971) controls the decision in

14    California whether a choice-of-law clause is enforceable.[7]  Under Section 187, the

15    Court must first determine "whether the chosen state has a substantial relationship to

16    the parties or their transaction, or…whether there is any other reasonable basis for the

17    parties' choice of law." *Nedllyod Lines B.V. v. Superior* Court, 3 Cal.4th 459, 466

18    (1992).  If either of these requirements is satisfied, the second inquiry is whether the

19    "chosen state's law is contrary to a fundamental policy" of the state which has a

20    "materially greater interest" than the chosen state in the determination of a particular

21    issue.  *Id*.  In weighing alternative interests, a Court must consider both (1) the

22    relevant contacts listed in the Restatement (Second) of Conflict of Laws § 188 and (2)

23    the interest of the involved states in the issues, the character of the contract and the

24

25    [7] California courts refuse to enforce choice-of-law clauses where substantial injustice would result or
     where the contract was unfairly imposed.  *See Washington Mut. Bank. v. Sup. Ct*., 24 Cal.4th 906,
26    918 (2001) ("evidence of unfair use of bargaining power may defeat enforcement of a forum
     selection clause contained in a contract of adhesion") (citing *Cal-State Bus. Prods. & Servs. v.*
27    *Ricoh*, 12 Cal. App. 4th 1666, 1679-80 (1993)).

28

1    relevant purposes of the contract law under consideration.  *Application Group, Inc. v.*

2    *Hunter Group, Inc*., 72 Cal.Rtpr.2d 73, 87 (Cal. Ct. App. 1998).

3        **a.**      <u>**Ohio Does Not Have A Substantial Relationship To the Parties or**</u>

4                  <u>**The Transaction**</u>

5         Here, the place of contracting was California.  Plaintiff signed up for, was

6    approved for, and used the credit card in California.  Plaintiff uses the card in

7    California and makes payments from her California bank account.  Defendant

8    WFNNB's headquarters were previously located in Ohio, but have now moved to

9    Delaware, and thus cannot demonstrate a substantial relationship to Ohio.

10        **b.**      <u>**California Has A Materially Greater Interest In Protecting Its**</u>

11                  <u>**Citizens from Fraud and Deceptive Business Practices**</u>

12         In analyzing which state has the materially greater interest a court should "first

13    examine the respective 'governmental interests' of the chosen and forum states and

14    then determine the extent to which those interests would be impaired by application of

15    the other state's laws."  *Application Group, Inc. v. Hunter Group, Inc*., 61 Cal.App.4[th]

16    881, 898 (1998).  California has "a compelling interest in preserving a business

17    climate free of fraud and deceptive practices."  *See Diamond Mutlimedia Sys., Inc. v.*

18    *Superior Court*, 968 P.2d at 557 (Cal. 1999).  "California's interest becomes even

19    more intense when it is protecting its citizens from "take it or leave it' agreements that

20    incorporate one-sided protections…"  *Klussman*, 36 Cal. Rptr.3d at 740.

21         The Court should also examine the relevant contacts of the parties with the

22    respective states.  *Id*. at 903.  California has the most significant contacts with the

23    parties because Plaintiff is a California resident, signed up for and used the Mastercard

24    in California, seeks to represent a class action representing hundreds, if not thousands

25    of other California residents that were marketed to directly in California, and is

26    seeking protection from Defendants' fraudulent conduct under California law.  Due to

27    the large potential number of California consumers involved, this factor weighs in

28    favor of applying California's consumer protection laws.  California has a strong

1   interest in preventing the employment of unfair and deceptive business practices

2   against its citizens.  *See Diamond Multimedia Sys.*, 968 P.2d at 557.

3         **c.**   **<u>Ohio Law Conflicts With Fundamental Policies of California</u>**

4         Applying Ohio law would conflict with fundamental policies of California that

5   preclude waivers of class action procedures that protect consumers. The California

6   legislature has put forth strong public policy precluding a waiver of the class action

7   remedy for the rights at issue in this case in Cal. Civ. Code § 1668; "All contracts

8   which have for their object, directly or indirectly, to exempt anyone from

9   responsibility for his own fraud…or violation of law, whether willful or negligent, are

10  against the policy of law."  The Ninth Circuit and a number of district courts,

11  including this Court, have repeatedly held that, under California law, arbitration

12  provisions containing a class action waiver are unconscionable and unenforceable.

13  *See e.g., Laster v. AT &T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009); *Bradberry v. T-*

14  *Mobile USA, Inc*., No. 06-6567, 2007 WL 1241936, 2007 (N.D. Cal. Apr. 27, 2007);

15  *In re Apple & AT&TM Antitrust Litig*., 596 F.Supp.2d 1288 (N.D. Cal. 2008); *Steiner*

16  *v. Apple Computers, Inc*., 556 F.Supp.2d 1016, 1026 (N.D. Cal. 2008); *Cazares v.*

17  *Pacific Shore Funding*, No. 04-2548, WL 149106, at *1(C.D. Cal. Jan. 3, 2006);

18  *Winig v. Cingular Wireless*, LLC, No. 06-4297, 2006 WL 2766007 (N.D. Cal. Sept.

19  27, 2006); *Hoffman v. Cingular Wireless, LLC*, No. 06-1021, 2006 U.S. Dist. LEXIS

20  79067 (S.D. Cal. Oct. 26, 2006); *Stern v. Cingular Wireless Corp*., 453 F.Supp.2d

21  1138 (C.D. Cal. 2006); *Janda v. T-Mobile, USA, Inc*., No. 05-3729, WL 708936 (N.D.

22  Cal. Mar. 17, 2006); *Cervantes v. Pacific Bell Wireless*, No. 05-1469, 2006 U.S. Dist.

23  LEXIS 89198 (S.D. Cal. Mar. 8, 2006).

24        California courts have also invalidated choice-of-law and forum selection

25  clauses that would deprive a consumer of the ability to bring a class action.

26  *Klussman*, 134 Cal.App.4th at 1298 (applying California law prohibiting waivers of

27  class-wide arbitration, rather than Delaware law, which would allow such waivers);

28  *Aral v. Earthlink, Inc*., 134 Cal.App.4th 544, 562-64 (2005) (court refused to enforce

1    Georgia forum selection clause in an arbitration provision that contained a class action

2    waiver); *AOL,* 108 Cal.Rptr.2d at 713 (holding that a forum selection clause impairing

3    the availability of class action violates important California public policies).[8]

4          These decisions confirm California courts view class arbitration bans as

5    patently unfair to potential plaintiffs who may only sue for a relatively small amounts,

6    while serving as exculpatory clauses for the large sophisticated companies protected

7    by these provisions that avoid litigation or responsibility for their wrongful conduct.

8    *See, e.g. Acorn v. Household Int'l, Inc.,* 211 F.Supp.2d 1160, 1170 (N.D. Cal. 2002)

9    (determining that arbitration clauses banning class treatment are harsh and unfair to

10   customers who might be owed a relatively small amount of money, and also serves as

11   a disincentive for companies to avoid the type of conduct that might lead to class

12   action litigation); *Shroyer v. New Cingular Wireless Serv., Inc*., 498 F.3d at 984;

13   *Szetela v. Discover Bank*, 97 Cal.App.4[th] 1094 (2002).  The Court of Appeals in

14   *Szetela* reasoned that a nominally mutual prohibition on class action is substantively

15   unconscionable as the bar: (i) is meant to prevent customers from seeking redress for

16   wrongs involving small amounts of money; (ii) serves as a disincentive for the

17   defendant to avoid conduct that might lead to class action litigation; and (iii)

18   jeopardizes consumer rights by prohibiting any effective means of litigating

19   challenged business practices.  *Szetela*, 97 Cal.App.4[th] at 1094.

20         In *Discover Bank v. Superior Court*, the court refused to enforce a class action

21   waiver in order to preserve important public policies of California, including policies

22   against exculpatory waivers, Cal. Civ. Code § 1668, prohibiting enforcement of

23

24   ─────────────────────
     [8] Defendants' argument that the FAA preempts any state law that attempts to invalidate class wide
25   arbitration waivers is simply wrong. The FAA preempts state laws that specifically target or seek to
     invalidate arbitration agreements, but state laws that invalidate all contracts generally are not
26   preempted.  Therefore, state laws that relate to formation, revocation and defenses to contracts such
     as unconscionability are not preempted even if they result in a finding that an arbitration agreement
27   is unenforceable.  *See Ting v. AT&T*, 319 F.3d 1126, 1150 n.15 (9th Cir. 2003) (the Ninth Circuit has
     held that "unconscionability is a *generally* applicable contract defense [and] may be applied to
28   invalidate an arbitration agreement without contravening § 2 of the FAA." (emphasis added).

1     unconscionable contract provisions, Civ. Code § 1670.5, and policies against waivers

2     of law established for a public purpose, Civ. Code § 3513.  The California Supreme

3     Court held that under California law, a class action waiver clause is unconscionable

4     and unenforceable if it: (1) is in a contract of adhesion, written by a party with

5     superior bargaining power; (2) occurs in a setting in which disputes between the

6     contracting parties involve small amounts of damages; and (3) it is alleged that the

7     party with superior bargaining power carried out a scheme to deliberately cheat large

8     numbers of consumers out of individually small amounts of money.  *Id.*

9        Here, WFNNB's arbitration provisions contain **exactly** such a class action

10    waiver in a contract of adhesion written by a banking institute with superior

11    bargaining power.  This case involves a small amount of damages on a per person

12    basis, and Plaintiff alleges Defendants were aware that many of the cardholders they

13    marketed and sold the Payment Protection plan to were ineligible for the plan's

14    benefits before they even enrolled, but still charged them monthly fees for the useless

15    service.

16        As noted in Defendants' motion, Ohio law does not protect its citizens from

17    exculpatory class action waivers.  Therefore, applying Ohio law conflicts with a

18    fundamental policy of California.

19        **2.**     **WFNNB's Arbitration Provisions Are Unconscionable and**

20             **Unenforceable Under California Law**

21        California law prohibits the enforcement of unconscionable contract provisions.

22    Cal. Civ. Code § 1670.5 (2001).   The doctrine of unconscionability has both a

23    procedural and a substantive element.  *See Nagrampa v. MailCoups, Inc.*, 496 F.3d

24    1257, 1280 (9th Cir. 2006).  The two types of unconscionability "need not both be

25    present to the same degree." *Id.*

26        **a.**     **Defendants' Arbitration Provisions Are Procedurally**

27             **Unconscionable**

28

1    Defendants' failure to provide Plaintiff with the arbitration terms prior to her

2    enrollment in the Mastercard Agreement and prior to her enrollment in the Payment

3    Protection plan amounts to procedural unconscionability. *See Baker v. Osborne*

4    *Development Corp.*, 159 Cal.App.4th 884, (Cal. Ct. App. 2008) (finding agreement

5    procedurally unconscionable where the plaintiffs were not given a copy of the

6    arbitration provision at the time the agreement was executed).

7    Though no evidence has been produced that Plaintiff ever received the "bill

8    stuffer" Notice, even if she had, this would still amount to procedural

9    unconscionability.   Courts routinely deem arbitration agreements provided in "bill

10   stuffers" unenforceable. *See e.g. Kaltwasser v. Cingular Wireless, LLC,* 543

11   F.Supp.2d 1124, 1130-31(N.D. Cal. Nov. 3, 2008) (though defendant claimed an

12   agreement modification was mailed to the plaintiff the court found the arbitration

13   provisions in question procedurally unconscionable); *Skirchak v. Dynamics Research*

14   *Corp.*, 508 F.3d 49 (1st Cir. 2007); *Discover Bank*, 113 P.3d at 1108 ("[W]hen a

15   consumer is given an amendment to its cardholder agreement in the form of a "bill

16   stuffer" that he would be deemed to accept if he did not close his account, an element

17   of procedural unconscionability is present"); *FIA Card Servs., N.A. v. Cohen*, 2009

18   WL 1675533, at *1 (N.J. Super. A.D. June 17, 2009) (holding that imposition of an

19   arbitration agreement through a "bill stuffer" presented a factual question precluding

20   summary judgment for the defendant).

21   Additionally, the arbitration agreement is procedurally unconscionable because

22   it is a classic contract of adhesion-- "a take-it-or-leave-it" contract where Plaintiff had

23   no ability to bargain or negotiate.   The Ninth Circuit has noted that a contract of

24   adhesion is "a contract drafted by the party of superior bargaining strength and

25   imposed on the other, without the opportunity to negotiate the terms," bears the

26   indicia of such overwhelming economic power to render an arbitration provision

27   procedurally unconscionable. *See Laster*, 584 F.3d at 853; *Shroyer*, 498 F.3d at 981;

28   *Nagrampa*, 469 F.3d at 1281. The Mastercard Agreement is a classic consumer

1   contract of adhesion, in that it is a "standardized contract imposed upon the
2   subscribing party without an opportunity to negotiate the terms."  *Nagrampa*, 469
3   F.3d at 1281.

4        Defendants contend that because Plaintiff had an opportunity to opt out of the
5   arbitration provisions, theirs is not a contract of adhesion.  "The presence of an opt out
6   clause does not automatically spare the arbitration provision from a finding of
7   procedural unconscionability."  *Gentry v. Superior Court,* 42 Cal. 4th 443, 470-474
8   (2007); *Kaltwasser,* 543 F.Supp.2d at 1130-31 (even though there was an opt out
9   provision, procedural unconscionability was still found).

10        **b.    Defendants' Arbitration Provisions Are Substantively**
11              **Unconscionable**

12        Defendants' arbitration and class action waiver provisions are also substantively
13   unconscionable.  The arbitration provisions are clearly one-sided. Indeed, Defendants
14   lose nothing by waiving their right to a class action, a right they would never exercise.
15   *See AutoNation*, *USA Corp. v. Leroy*, 105 S.W.3d 190, 198 (Tex. App. 2003) ("The
16   basic test for unconscionability is whether, given the parties' general commercial
17   background and the commercial needs of the particular trade or case, the clause
18   involved is so one-sided that it is unconscionable under the circumstances existing
19   when the parties made the contract"); *Ingle v. Circuit City Stores, Inc*., 328 F.3d 1165,
20   1176 (9th Cir. 2003) (noting the obvious fact that "Circuit City would never bring a
21   class proceeding against an employee."). Yet, if enforced, the waiver would deny
22   consumers an important mechanism for vindicating claims of minor pecuniary value.
23   *See e.g. Eisen v. Carlisle*, 417 U.S. 156, 161 (1974); *Deposit Guar. Nat'l Bank v.
24   Roper,* 445 U.S. 326, 338 n.9 (1980). The Ninth Circuit has noted that even where
25   "neither side technically had recourse to the courts," where there is "no chance that a
26   large company would file a class action against its customers," the class action waiver
27   is rendered "unduly one-sided' and unconscionable. *Ting*, 319 F.3d at 1150 n.14.

28

1    Additional evidence of substantive unconscionability is that due to the small

2    individual damages at issue, the class action waiver effectively operates as an

3    exculpatory clause.    *See Shroyer*, 498 F.3d at 986 ("…when the potential for

4    individual gain is small, very few Plaintiffs, if any will pursue individual arbitration or

5    litigation, which greatly reduces the aggregate liability a company faces when it has

6    exacted small sums from millions of consumers."; *see also Amchem*., 521 U.S. at 617

7    ("…small recoveries do not provide the incentive for any individual to bring a solo

8    action prosecuting his or her rights.  A class action solves this problem by aggregating

9    the relatively paltry potential recoveries into something worth someone's (usually an

10   attorney's labor."); *see also Discover Bank*, 113 P.3d 1110.

11   The Supreme Court has recognized that financial implications of arbitration

12   may "preclude a litigant…from effectively vindicating her federal statutory rights in

13   the arbitral forum."  *Green Tree Financial Corp. – Alabama v. Randolph*, 531 U.S.

14   79, 90 (2000).  In accessing the high costs of bringing an individual claim in

15   arbitration, the court should consider not only filing fees, but also all the reasonable

16   related costs that the plaintiff is likely to incur.  *Id.* (Supreme Court standard was

17   whether arbitration would be "prohibitively expensive" and the court's decision was

18   not limited to filing fees).  Courts recognize that plaintiffs with claims as much as a

19   few thousand dollars are not likely to pursue individual litigation or arbitration where

20   the cost of expert fees and attorneys' fees would far exceed the potential recovery.

21   *Kristian v. Comcast,* 446 F.3d 25, 54-55 (1st Cir. 2006).

22   The Supreme Court has also recognized that the class action mechanism is

23   essential to the vindication of litigants' rights "to overcome the problem that small

24   recoveries do not provide the incentive for any individual to bring solo action

25   prosecuting his or her rights."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617

26   (1997) (quotation omitted).  *See also In re Charter Co.*, 876 F.2d 866, 871 (11th Cir.

27   1989) ("[T]he effort and cost of investigating and initiating a claim may be greater

28   than many claimants' individual stake in the outcome, discouraging the prosecution of

these claims absent a class action filing procedure."). The bar on class wide arbitration, combined with the excessive costs and financial risks of arbitrating an individual claim, prevent Plaintiff from pursuing her claims.

Plaintiff's individual claim for damages would certainly be considered relatively small and, absent a right to bring this action on a class-wide basis, few if any cardholders that enrolled in the Payment Protection plan would undertake the effort to bring a claim despite the consistent and widespread illegal and unfair practices of the Defendants. Moreover, claims of deceptive business practices are by their nature difficult for individual consumers to discover and successfully prosecute. *See Kinkel v. Cingular Wireless, LLC*, 857 N.E.2d 250, 267-68 (2006) (the nature of an underlying claim is also relevant to the determination of unconscionability because some claims "are not likely to be recognized [by typical consumers] let alone successfully argued in court or arbitration, without the aid of an attorney").

Even assuming Plaintiff could find a suitable attorney willing to represent her in an individual arbitration proceeding, the costs associated with the retention of experts alone would act as another barrier to prevent Plaintiff from pursuing her claims. Plaintiff's action most likely requires an expert to assess the defective service, the widespread impact of the alleged deceptive marketing and sales of the service, and the financial value of the alleged deception on cardholders. By precluding class proceedings, Defendants effectively deny their customers the ability to pool their resources with other damaged cardholders and share the onus and costs associated with proving the same claims against the Defendants.

While WFNNB deceptively drafted its arbitration provisions to appear to be somewhat "consumer friendly" they are anything but. The mandatory arbitration provisions in the Mastercard Agreement provide "[i]f you cannot afford to pay the fees charged by the Administrator or if you believe that such fees are or will be prohibitively expensive or excessive, we will entertain in good faith any reasonable

written request by you for us to pay or reimburse you for all or part of such fees."[9] However, "each party shall bear the expense of that party's attorneys, experts and witnesses, regardless of which party prevails in the arbitration."  This is a critical barrier to entry.  *See In re American Express Merchants Litig.*, 554 F.3d 300, 316 (2d Cir. 2009).

There can be no question the arbitration provisions and class waivers here should be invalidated. Plaintiff neither negotiated these provisions nor assented to their binding effect on her rights.  These provisions instead were imposed on a take-it-or-leave-it basis, in a pre-printed contract of adhesion.  The class waiver is harshly one-sided.  Defendants do not and cannot offer any legitimate business justification for requiring their customers to waive their rights to participate in class action.  Defendants would never file a class action against their customers, yet class actions, as a practical matter, constitute the only mechanism for deterring and redressing the wrongdoing on the part of the Defendants.  The arbitration provisions at issue here are procedurally and substantively unconscionable and thus should not be enforced.  Since there is no basis for imposing arbitration the Court should allow the proceedings to continue and deny a request for a stay.

### 3.   WFNNB's Arbitration Provisions Are Also Unconscionable and Unenforceable Under Ohio Law

Ohio law also recognizes that a contract, including an arbitration agreement may be unenforceable due to generally applicable contract defenses such as unconscionability.  "Unconscionability is determined by reference to the relative benefit of the bargain to the parties at the times of its making, the nature of the methods employed in negotiating it, and the relative bargaining power of the parties."

---

[9] Though the Notice provides somewhat more opportunity for a consumer to recover the potential significant costs associated with arbitration, there is still no guarantee Defendants would cover all of the consumers' costs, thus there is still a great disincentive for individual consumers to try to arbitrate their claims for relatively small amounts of money.  Again, the terms of the Notice are not binding in this matter since they have never been agreed to as discussed previously.

*Miller v. Household Realty Corp.*, No 81968, 2003 WL 21469782, at *7 (Ohio Ct. App. June 26, 2003).

Procedural unconscionability is evident when there was no voluntary meeting of the minds during the execution of the arbitration agreement and substantive unconscionability is evident when the results of the agreement are unfair and unreasonable. *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000). The presumption favoring arbitration is weaker in a case where there are strong indications that the arbitration clause is adhesive in nature. *Williams v. Aetna Finance Company* 83 Ohio St.3d 464 (1998). Also, arbitration agreements should be examined more closely in dealings between consumers and sophisticated lending institutions. *Miller*, 2003 WL 21469782 at *7.

As set forth above, Defendants' arbitration provisions are procedurally unconscionable because they were not presented to Plaintiff prior to or during her enrollment in the Mastercard Agreement and the Payment Protection plan, and therefore she had no meaningful opportunity to review or negotiate the terms. Thus, the agreement is a classic take-it-or-leave-it contract of adhesion, drafted by a sophisticated banking institution that clearly has superior bargaining power. The effect of the arbitration provisions are unfair and unreasonable since they effectively prevent Plaintiff and other consumers from vindicating their rights and challenging Defendants' wrongful conduct.

### a.   The Arbitration Provisions Are Not Severable and Therefore All of the Arbitration Provisions Are Unenforceable

Courts striking class action waiver clauses in arbitration agreements often void the entire arbitration agreement. *See Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1107-09 (9th Cir. 2003); *Comb v. Paypal, Inc*., 218 F.Supp.2d 1165, 1175 (N.D. Cal. 2002); *see also Kristian*, 446 F.3d at 62 (noting courts prefer to strike the entire arbitration agreement rather than sever clauses affecting a fundamental element of the arbitration regime, such as the availability of class-wide arbitration). In *Mantor*, the

Ninth Circuit held that "a party may not fashion an adhesive arbitration agreement that significantly limits the other party's ability to substantiate his legal claims." *Mantor*, 335 F.3d at 1107-09. The Court invalidated the entire agreement on the basis that "any earnest attempt to ameliorate the unconscionable aspects of [the] arbitration agreement would require this court to assume the role of contract author rather than interpreter." *Id.*

Though the Court should not be burdened with the "role of contract author" in the event that the court finds that this matter should be arbitrated, the Court should order class wide arbitration. Despite Defendants' attempt to enforce their unconscionable class-action arbitration waiver clause, a court has the discretion to order class-wide arbitration. *See Keating v. Superior Court*, 645 P.2d 1192, 1207-10 (Cal. 1982), *rev'd on other grounds sub nom. Southland Corp. v. Keating*, 465 U.S. 1 (1984), *Discover Bank*, 113 P.3d at 1113-16. Thus, if this Court finds that Plaintiff's claims should be decided through arbitration, Plaintiff should at least be allowed to utilize the substantial benefits of a class wide arbitration.

## C. IF ARBITRATION IS ORDERED, THIS COURT SHOULD BIFURCATE AND GRANT PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF

Even if the Court is inclined to order arbitration, all of the proceedings should not be stayed. The Court should bifurcate the matter and hear Plaintiff's claims requesting injunctive relief under the UCL and the CLRA to remedy Defendants' fraudulent and deceptive practices that continue to harm California consumers. For example, Injunctive relief under the CLRA "is for the benefit of the general public rather than the party bringing the action," and thus such relief is not subject to arbitration. *Broughton v. Cigna Health Plans of California*, 988 P.2d 67, 78 (Cal. 1999).

V.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants Alliance Data and WFNNB's Motion to Compel Arbitration and Stay All Proceedings in its entirety. In the alternative, Plaintiff requests the court bifurcate the matter, and hear Plaintiff's UCL and CLRA for injunctive relief. And order class-wide arbitration on damages.

DATED: February 7, 2011               Attorneys for Plaintiff Negin Zarandi and the

                                      Proposed Class


                              By:   /s/ Gillian L. Wade
                                    MILSTEIN  ADELMAN LLP
                                       Gillian L. Wade
                                       Michael I. Miller

                                    **MILSTEIN ADELMAN, LLP**
                                    Gillian L. Wade, State Bar No. 229124
                                    gwade@maklawyers.com
                                    Michael I. Miller, State Bar No. 266459
                                    imiller@maklawyers.com
                                    2800 Donald Douglas Loop North
                                    Santa Monica, California 90405
                                    Telephone:   (310) 396-9600
                                    Fax:         (310) 396-9635

                                    **GOLOMB & HONIK, P.C.**
                                    Richard M. Golomb (PA Bar No. 42845)
                                    RGolomb@golombhonik.com
                                    Ruben Honik (PA Bar No. 33109)
                                    RHonik@golombhonik.com
                                    Kenneth J. Grunfeld (PA Bar No. 84121)
                                    KGrunfeld@golombhonik.com
                                    1515 Market Street, Suite 1100
                                    Philadelphia, PA 19102
                                    Telephone:   (215) 985-9177
                                    Fax:         (215) 985- 4169

**LIEFF, CABRASER, HEIMANN & BERNSTEIN**

Rachel Geman (RG 0998)
rgeman@lchb.com
Wendy R. Fleishman (WF3017)
(to seek admission *pro hac vice*)
wfleishman@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  (212) 355-9500
Fax:          (212) 355-9592

Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
Allison Elgart (State Bar No. 241901)
aelgart@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  (415) 956-1000
Fax:          (415) 956-1008