Daniel M. Benjamin (SBN 209240)
benjamind@ballardspahr.com
**BALLARD SPAHR LLP**
401 WEST A STREET, SUITE 1150
SAN DIEGO, CA 92101
Telephone:   619.696.9200
Facsimile:   619.696.9269

Alan J. Kaplinsky (*pro hac vice*)
kaplinsky@ballardspahr.com
Martin C. Bryce, Jr. (*pro hac vice*)
bryce@ballardspahr.com
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Telephone:  (215) 665-8500
Facsimile:  (215) 864-8999

Attorneys for Defendants Alliance Data
Systems Corporation and World Financial
Network National Bank

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEGIN ZARANDI, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    vs.<br><br>ALLIANCE DATA SYSTEMS CORPORATION, a Delaware Corporation, and WORLD FINANCIAL NETWORK NATIONAL BANK, a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>      Defendants. | Case No. 2:10-cv-08309-DSF-JCG<br><br>**REPLY BRIEF OF THE DEFENDANTS ALLIANCE DATA SYSTEMS CORPORATION AND WORLD FINANCIAL NETWORK NATIONAL BANK IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**<br><br>Date:  February 28, 2011<br>Time: 1:30 p.m.<br>Courtroom:  840<br>Judge: Dale S. Fischer |

# <u>TABLE OF CONTENTS</u>

<u>Pages</u>

I.      INTRODUCTION ........................................................................................1

II.     ARGUMENT .............................................................................................1

      A.    Plaintiff Agreed To Arbitration And Twice Failed To  Exercise
              Her Right To Opt-Out Of Arbitration. ...................................................1

      B.    The Arbitration Provision Is Not Unconscionable  Under Either
              Ohio Or California Law. ........................................................................5

            1.    Ohio Law Applies And Under Ohio Law The Arbitration
                     Agreement Including Its Class Action Waiver Is
                     Enforceable. ...............................................................................5

            2.    Ohio Law Does Not Conflict With Any Fundamental
                     Policy Under California Law And The Arbitration
                     Provision Is Enforceable Under California Law In Any
                     Event. ........................................................................................7

      C.    The Court Should Stay This Matter Pending A Decision Of The
              United States Supreme Court in Concepcion. .....................................12

III.    CONCLUSION ........................................................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Adler v. Dell, Inc.
No. 08-13170, 2008 WL 5351042, at *4 (E.D. Mich. Dec. 18, 2008) ............6

Arriaga v. Cross Country Bank
163 F. Supp.2d 1189, 1198 (S.D. Cal. 2001) ..................................................11

AT&T Mobility LLC v. Concepcion
130 S. Ct. 3322 (2010) ...........................................................................11, 12

Bess v. Check Express
294 F.3d 1298, 1308-09 (11th Cir. 2002) ........................................................5

Burden v. Check Into Cash of Ken.LLC
267 F.3d 483, 492 (6th Cir. 2001) ..................................................................7

Cappalli v. Nat'l Bank of the Great Lakes
281 F.3d 219 (3d Cir. 2001) ...........................................................................2

Chastain v. Robinson-Humphrey Co.
957 F.2d 851, 855 (11th Cir. 1992) .................................................................4

Circuit City Stores v. Najd
294 F.3d 1104 (9th Cir. 2002) .........................................................................8

Cohen v. Wedbush, Noble, Cooke, Inc.
841 F.2d 282, 287 (9th Cir. 1988) ...................................................................5

Credit Acceptance Corp. v. Davison
644 F. Supp.2d 948, 958-60 (N.D. Ohio 2009)...........................................7, 8

Cruz v. Cingular Wireless, LLC
No. 2:07-cv-714, 2008 WL 4279690, at *4 (M.D. Fla. Sept. 15, 2008).........11

Dassero v. Edwards
190 F. Supp.2d 544, 555-56 (W.D.N.Y. 2002) ................................................4

Davidson v. Cingular Wireless, LLC
No. 06-133, 2007 WL 896349 (E.D. Ark. Mar. 23, 2007) .............................11

Francis v. AT&T Mobility, LLC
No. 07-CV-14921, 2009 WL 416063, at *9 (E.D. Mich. Feb. 18, 2009).......11

Gentry v. Superior Ct.
42 Cal.4th 443 (2007)......................................................................................9

Guadagno v. E*Trade Bank
592 F. Supp.2d 1263, 1270 (C.D. Cal. 2008)..................................................8

Herrington v. Union Planters Bank, N.A.
113 F. Supp. 2d 1026 (S.D. Miss. 2001)..........................................................2

Howard v. Wells Fargo Minn., N.A.
  No. 06-2821, 2007 WL 2778664, at *5 (N.D. Ohio Sept. 21, 2007)..............11

In re Checking Acc't Overdraft Litig. (Gulley)
  734 F. Supp. 2d 1294, 1295-96 (S.D. Fla. May 25, 2010).....................6, 7, 10

Jenkins v. First Am. Cash Advance of Ga., Inc.
  400 F.3d 868, 879 (11th Cir. 2005)................................................................10

Johnson v. West Suburban Bank
  225 F.3d 366, 374 (3d Cir. 2000) ...................................................................9

Kaltwasser v. Cingular Wireless LLC
  543 F. Supp.2d 1124, 1130 n.5 (N.D. Cal. 2008) ...........................................9

Kaltwasser v. Cingular Wireless LLC
  No. 07-0411, 2010 WL 2557379 (N.D. Cal. June 21, 2010).........................12

Laster v. AT&T Mobility LLC
  584 F.3d 849 (9th Cir. 2009)........................................................................11

Lloyd v. MBNA Am. Bank, N.A.
  No. 00-109, 2001 WL 194300 (D. Del. Feb. 22, 2001) ...................................2

Lux v. Good Guys
  No. 05-300, 2005 WL 1713421, at *1 (C.D. Cal. July 11, 2005)....................7

McCarthy v. Providential Corp.
  No. 94-0627, 1994 WL 387852, at *5 (N.D. Cal. July 19, 1994)....................5

Medimatch, Inc. v. Lucent Techs., Inc.
  120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) ....................................................7

Meyers v. Univest Home Loan, Inc.
  No. C-93-1783 MHP, 1993 U.S. Dist. LEXIS 11333, at *3 (N.D. Cal. Aug. 4,
  1993)................................................................................................................4

Nedlloyd Lines B.V. v. Superior Court
  3 Cal.4th 459, 464-65 (1992) .........................................................................5

Net2Phone, Inc. v. Superior Court
  109 Cal. App.4th 583 (2003)...........................................................................7

Providian Nat'l Bank v. Screws,
  894 So.2d 625 (Ala. 2003) ............................................................................11

Reilly v. WM Fin. Serv.
  95 Fed. Appx. 851, 852 (9th Cir. 2004) ..........................................................4

Santos v. Household Internat'l Inc.
  No. 03-1243, 2003 WL 25911112 (N.D. Cal. Oct. 24, 2003) .........................3

Smith v. Americredit Fin. Serv.
    No. 09-1076, 2009 WL 4895280, at *2-3 (S.D. Cal. Dec. 11, 2009) .............. 9

Snydor v. Conseco Financial Servicing Corp.
252 F.3d 302, 306 (4ᵗʰ Cir. 2001) ................................................................... 5

Southland Corp. v. Keating
    465 U.S. 1, 10 (1984) ...................................................................................11

Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.
    130 S. Ct. 1758 (2010) .................................................................................12

Strawn v. AT&T Mobility
    593 F. Supp.2d 894, 896 & 900 n.6 (S.D. W.Va. 2009) ..............................11

Tinder v. Pinkerton Security
    305 F.3d 728, 735 (7ᵗʰ Cir. 2002) ................................................................ 4

Washington Mutual Bank, FA v. Superior Court
    24 Cal. 4th 906 (2001) .................................................................................. 6

Wong v. Tenneco
    39 Cal. 3d 126, 135 (1985) ............................................................................ 7

Defendants Alliance Data Systems Corporation ("Alliance Data") and World Financial Network National Bank ("the Bank") submit this Reply Brief in Further Support of their Motion to Compel Arbitration and Stay All Proceedings.

## I.   <u>INTRODUCTION</u>

Plaintiff does not dispute that the parties' Arbitration Provision and the instant Motion are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. Nor does she specifically deny receiving both the Credit Card Agreement in October 2008 (the "Agreement") and the Important Notice ("Notice") containing the Arbitration Provision in December 2009.  She does not contend that she exercised her right to opt-out of the arbitration provision in the Agreement or the updated Arbitration Provision in the Notice.  These undisputed facts are fatal to Plaintiff's arguments in opposition to Defendants' Motion to Compel Arbitration.

## II.   <u>ARGUMENT</u>

### A.   **Plaintiff Agreed To Arbitration And Twice Failed To <u>Exercise Her Right To Opt-Out Of Arbitration.</u>**

Plaintiff argues she never agreed to arbitration contending:  1) she was pre-approved for her MasterCard and used it before ever receiving the Agreement; 2) her "silence" cannot be construed as consent to the Agreement or the Arbitration Provision; and 3) she was not specifically informed of and does not recall ever receiving the Agreement or the Notice containing the updated Arbitration Provision. <u>See</u> Plaintiff's Opp. at 1-4; Zarandi Decl. at ¶¶ 4-16.  Each of these arguments fails.

Whether or not Plaintiff incurred charges on her account or was pre-approved before receiving the physical MasterCard and the Agreement is wholly irrelevant for several independent reasons.  First, when she did receive the Agreement, she had the ability to review and opt-out of the arbitration provision contained therein.  The Agreement explicitly afforded Plaintiff the right to opt-out of the arbitration provision contained therein and gave her thirty (30) days within which to do so.  <u>See</u> Agreement at ¶ 39 ("**Non-Acceptance Instructions.**"  "If you do not wish to accept

this binding Arbitration Provision, you must notify us in writing within 30 days after the date indicated on your first billing statement after receipt of this Agreement stating your non-acceptance.")  (bold face in original).  Plaintiff does <u>not</u> contend that she opted-out of the arbitration provision in the Agreement.

Second, contrary to Plaintiff's assertion, she did not agree to the Agreement simply through silence or inaction.  To the contrary, Paragraph 3 of the Agreement explicitly provides that Plaintiff's signature on the Card, signature on "any charge slip" or "any use of the Card" constitutes "your agreement to comply with the terms provided for in this Agreement."  Plaintiff does not dispute – nor could she – that she affirmed her agreement in several ways and on several occasions: she signed the Card, she signed charge slips and she repeatedly used her Card after receipt of the Agreement.  Therefore, she agreed to the Agreement and its terms.

Third, Plaintiff's arguments also ignore the fact that the Notice added the updated Arbitration Provision which plainly requires the arbitration of her claims against Defendants.  Pursuant to the terms of the Notice, Plaintiff had the unfettered right within thirty (30) days to reject both the Arbitration Provision and the arbitration provision already in the Agreement.  Arbitration Provision at ¶ C.  She does <u>not</u> contend she exercised that right and, thus, she agreed to the terms of the updated Arbitration Provision.[1]  Moreover, the Arbitration Provision in the Notice

---

[1]    Numerous courts have upheld the addition of updated, or even new, arbitration agreements through change-in-terms procedures whereby a consumer who fails to opt-out agrees to the change-in-terms.  <u>See</u>, <u>e.g.</u>, <u>Cappalli v. Nat'l Bank of the Great Lakes</u>, 281 F.3d 219 (3d Cir. 2001); <u>Herrington v. Union Planters Bank, N.A.</u>, 113 F. Supp. 2d 1026 (S.D. Miss. 2001), <u>aff'd</u>, 265 F3d 1059 (5th Cir. 2001); <u>Lloyd v. MBNA Am. Bank, N.A.</u>, No. 00-109, 2001 WL 194300 (D. Del. Feb. 22, 2001), <u>aff'd</u>, No. 01-1752, 2002 WL 21932 (3rd Cir. Jan. 7, 2001).  Indeed, Ohio law expressly provides for the change-in-terms procedures used by the Bank here.  <u>See</u> Ohio Rev. Code § 1109.20 (D).  The cases cited by Plaintiff, <u>Golden Eagle Ins. Co. v. Foremost Ins. Co.</u>, 20 Cal. App.4th 1372 (1993) and <u>Beatty Safeway Scaffold, Inc. v. Skrable</u>, 180 Cal. App.2d 650 (1960), are inapposite as they involved renewal of an insurance policy, <u>Golden Eagle</u>, 20 Cal. App.4th at 1385-86, or whether a contract of a specific duration could be renewed through action of one of the parties, <u>Skrable</u>, 180 Cal. App.2d at 655.

could not have been a surprise to Plaintiff because the Agreement already contained an arbitration provision.  In fact, the Arbitration Provision contained additional consumer friendly provisions such as the "bump-up" provision guaranteeing Plaintiff a minimum award in arbitration of $5,100.

Furthermore, the Arbitration Provision expressly defines "Covered Claims" as including "any claim, dispute or controversy between you and us" and does not limit disputes to only those that arise after receipt of the Notice.  Arbitration Provision at ¶ 3.  Furthermore, it expressly provides that those disputes subject to arbitration include "disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account."  Arbitration Provision at ¶ 3.  By failing to exercise her unfettered right to opt-out of the Arbitration Provision, Plaintiff agreed to arbitrate her disputes with Defendants even if those disputes pre-dated her receipt of the Notice.[2]

This case is even stronger than Santos v. Household Internat'l Inc., No. 03-1243, 2003 WL 25911112 (N.D. Cal. Oct. 24, 2003) where, as Plaintiff notes, the Court enforced an arbitration agreement with a class action waiver because the plaintiff had the opportunity to review the same and failed to opt-out.  See Plaintiff's Opp. at 9-10.  Here, Plaintiff was afforded two separate and distinct thirty day periods to review first the Agreement and then the Arbitration Provision and she failed to opt-out of either.  Moreover, if she did exercise her right, she would have been able to keep her account open unlike the plaintiff in Santos.

Plaintiff does contend that she does not recall receiving either the Agreement or the Notice.  Such a contention, however, is plainly unavailing.  A party opposing

---

[2]    Courts have consistently enforced the terms of arbitration provisions which purport to cover disputes arising prior to the effective date of the arbitration provision.  See, e.g., Wirdzek v. Monetary Management of California, Inc., No. CV-F-99-5415, 1999 U.S. Dist. LEXIS 8544 (E.D. Cal. May 25, 1999);In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 406-07 (S.D.N.Y. 2003); Goetsch v. Shell Oil Co., 197 F.R.D. 574 (W.D.N.C. 2000).

arbitration <u>cannot</u> place the existence of an arbitration agreement in issue so as to warrant denial of a motion to compel by merely denying the existence of the agreement.  <u>See</u>, <u>e.g.</u>, <u>Chastain v. Robinson-Humphrey Co.</u>, 957 F.2d 851, 855 (11th Cir. 1992) ("party cannot place the making of an arbitration agreement in issue simply by opining that no agreement exists"); <u>Dassero v. Edwards</u>, 190 F. Supp.2d 544, 555-56 (W.D.N.Y. 2002) (same).  "Rather, the party must substantiate the denial of the contract with enough evidence to make the denial colorable." <u>Chastain</u>, 957 F.2d at 855.  <u>Accord</u> <u>Tinder v. Pinkerton Security</u>, 305 F.3d 728, 735 (7th Cir. 2002) ("a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests").  Zarandi has failed to meet her heavy burden.  Zarandi's alleged inability to "recall" and her alleged unawareness of the Arbitration Provision are no defense to arbitration.  <u>See</u>, <u>e.g.</u>, <u>Tinder</u>, 305 F.3d at 734-35 (enforcing an arbitration agreement against an employee who claimed that she did not recall receiving it and that it had been imposed unilaterally); <u>Meyers v. Univest Home Loan, Inc.</u>, No. C-93-1783 MHP, 1993 U.S. Dist. LEXIS 11333, at *3 (N.D. Cal. Aug. 4, 1993) (consumers who obtained home loans were bound by arbitration clause even though they could not recall reading or hearing about the arbitration agreement and were not aware of arbitration as a method of dispute resolution).

Any assertion by Zarandi that she never read the Arbitration Provision – even if true – is also unavailing.  The courts have repeatedly rejected arguments that an arbitration agreement is invalid because a party failed to read it.  <u>See</u>, <u>e.g.</u>, <u>Reilly v. WM Fin. Serv.</u>, 95 Fed. Appx. 851, 852 (9th Cir. 2004) ("a party can be bound by an arbitration clause even if he failed to read or understand it"); <u>Snydor v. Conseco Financial Servicing Corp.</u>, 252 F.3d 302, 306 (4th Cir. 2001) (a party "will not be allowed to impeach the effect of the instrument by showing that he was ignorant of

1  its contents or failed to read it.  That the Appellees did not make themselves aware

2  of the arbitration clause . . . is irrelevant") (citation omitted).

3         Finally, there was no requirement – as if the bold headings in the Notice and

4  Agreement were not enough – that Defendants specifically inform Plaintiff of the

5  existence of an arbitration provision.  See, e.g., Bess v. Check Express, 294 F.3d

6  1298, 1308-09 (11th Cir. 2002) (no duty to disclose or explain arbitration

7  agreement); Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 287 (9th Cir.

8  1988) (no duty to explain effects of arbitration clause); McCarthy v. Providential

9  Corp., No. 94-0627, 1994 WL 387852, at *5 (N.D. Cal. July 19, 1994) (rejecting

10  argument that defendants had a duty to explain arbitration clause to senior citizens),

11  appeal dismissed, 122 F.3d 1242 (9th Cir. 1997), cert. denied, 119 S. Ct. 275 (1998).

12  **B.    The Arbitration Provision Is Not Unconscionable**

13  **Under Either Ohio Or California Law.**

14  **1.    Ohio Law Applies And Under Ohio Law The Arbitration Agreement Including Its Class Action Waiver Is Enforceable.**

15         The applicable choice-of-law rules require the enforcement of the

16  Agreement's choice-of-law clause and the application of Ohio law.  Under section

17  187 of the Restatement (Second) of Conflicts, the parties' choice of Ohio law must

18  be enforced unless (1) Ohio has no substantial relationship to the parties or the

19  transaction and there is no other reasonable basis for the parties' choice, or

20  (2) applying Ohio law would be contrary to a fundamental policy of a state

21  (a) which has a materially greater interest than Ohio in determining the issue and

22  (b) which would be the state of applicable law in the absence of the parties' choice.

23  See Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 464-65 (1992) ("[I]n

24  determining the enforceability of arm's length contractual choice-of-law provisions,

25  California courts shall apply the principles set forth in Restatement section 187,

26  which reflects a strong policy favoring enforcement of such provisions.").

27

28

Applying the Restatement analysis, Ohio clearly has a substantial relationship to the parties and the transaction.  Ohio was the state where the Bank was located and was headquartered at all times relevant hereto,[3] the state from which credit was issued by the Bank, the state to which Plaintiff would have directed any correspondence opting-out of the Arbitration Provision, and the state whose law was specifically chosen to govern state law issues under the Agreement.  See Agreement at ¶¶ 21, 39 ("Non-Acceptance Instructions"); Notice at ¶ C(1).  Under these facts, Ohio clearly has a substantial relationship to the parties and this matter.  See, e.g., In re Checking Acc't Overdraft Litig. (Gulley), 734 F. Supp. 2d 1294, 1295-96 (S.D. Fla. May 25, 2010) (enforcing Ohio choice-of-law clause in similar circumstances); Adler v. Dell, Inc., No. 08-13170, 2008 WL 5351042, at *4 (E.D. Mich. Dec. 18, 2008) (substantial connection existed to state where defendant located).

The second prong of the Restatement test is also met here because Ohio law is not contrary to any fundamental policy of any state including California.  In Washington Mutual Bank, FA v. Superior Court, 24 Cal. 4th 906 (2001), the California Supreme Court rejected the lower court's rationale that "businesses dealing with mass groups of consumers should not be permitted to rely on choice-of-law clauses as a means of avoiding involvement" in a class action.  Washington Mutual, 24 Cal. 4th at 918 ("[c]lass actions are provided only as a means to enforce substantive law.  Altering the substantive law to accommodate procedure would be to confuse the means with the ends - to sacrifice the goal for the going.") (citation omitted, emphasis added).  In this regard, Washington Mutual confirms that the procedural mechanism for bringing claims on a class, rather than individual, basis, is not a fundamental California public policy.  Id.  See, e.g., Lux v. Good Guys, No.

---

[3]     Plaintiff notes that the Bank's headquarters moved to Delaware in August 2010.  See Plaintiff's Opp. at 10 n. 6.  There is no dispute that at all times relevant to this matter and Plaintiff's account, the Bank was headquartered in Ohio.

05-300, 2005 WL 1713421, at *1 (C.D. Cal. July 11, 2005) (enforcing Nevada choice-of-law clause and upholding arbitration agreement with class action waiver under Nevada law finding no California fundamental policy at issue).

Likewise, Plaintiff cannot avoid Ohio law based on its ultimate effect on this particular lawsuit.  See Medimatch, Inc. v. Lucent Techs., Inc., 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) ("The mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law.") (citing Wong v. Tenneco, 39 Cal. 3d 126, 135 (1985)); Net2Phone, Inc. v. Superior Court, 109 Cal. App.4th 583 (2003) (enforcing New Jersey forum selection clause with respect to a Unfair Competition Law claim despite the fact that the plaintiff could not bring such a claim in New Jersey).

Finally, Plaintiff's unsupported arguments to the contrary, there can be no serious dispute that the Arbitration Provision and its class action waiver are enforceable under Ohio law.  See Plaintiff's Opp. at 20-21.  Plaintiff does not cite a single case invalidating an arbitration provision with a class action waiver under Ohio law.  Indeed, the Ohio courts, both state and federal have repeatedly enforced arbitration agreements with class action waivers and the Sixth Circuit has even noted the "strong precedent" in support of the validity of class action waivers.  See Burden v. Check Into Cash of Ken., LLC, 267 F.3d 483, 492 (6th Cir. 2001); see also Gulley, 734 F. Supp.2d 1294; Credit Acceptance Corp. v. Davison, 644 F. Supp.2d 948, 958-60 (N.D. Ohio 2009).

**2.    Ohio Law Does Not Conflict With Any Fundamental Policy Under California Law And The Arbitration Provision Is Enforceable Under California Law In Any Event.**

Plaintiff contends both that the Arbitration Provision and its class action waiver are unconscionable under California law and the application of Ohio law would conflict with a fundamental California policy because it would act as an

"exculpatory clause[ ]."  See Plaintiff's Opp. at 13-20.  Plaintiff's assertion is both legally and factually erroneous.  Plaintiff's arguments fail to address the many consumer friendly provisions of the Arbitration Provision and the numerous court decisions that have enforced arbitration provisions with such features.

First, there can be no dispute that Plaintiff had an unfettered right to opt-out of the Arbitration Provision and the arbitration provision in the Agreement.  See Arbitration Provision at ¶ C.  If she had exercised that right, her account would have been unaffected and would have remained open.  See id.  In such circumstances, courts have repeatedly found that such a right to reject arbitration negates any finding of procedural unconscionability or unconcscionability in general.  See, e.g., Guadagno v. E*Trade Bank, 592 F. Supp.2d 1263, 1270 (C.D. Cal. 2008) ("California does not have a fundamental policy against all class action waivers" and enforcing arbitration provision under Virginia law where plaintiff could have opted-out); Davison, 644 F. Supp.2d at 958.

Plaintiff attempts to distinguish this case from Circuit City Stores v. Najd, 294 F.3d 1104 (9th Cir. 2002) and Circuit City Stores v. Ahmed, 283 F.3d 1198 (9th Cir. 2002), both of which were cited by Defendants, where the Ninth Circuit enforced arbitration provisions with a class action waiver.  See Plaintiff's Opp. at 8-9.  In attempting to distinguish those cases, Plaintiff actually makes Defendants' point.  As noted by Plaintiff, the plaintiffs in those cases "had thirty days to review the agreement and decide whether to opt-out" and "Circuit City made clear that opting out of the agreement would have no effect on the employment relationship." Id.  Those are precisely the same facts as in the present case.  Plaintiff, like the plaintiffs in Ahmed and Najd, had thirty (30) days to review the Arbitration Provision, she had the right to opt-out and the Bank made clear that her exercising that right would have had no effect on her account.

1    Indeed, Plaintiff's unfettered right to reject the Arbitration Provision while

2    keeping her account open distinguishes this case from the cases cited by Plaintiff.

3    For instance, in <u>Kaltwasser v. Cingular Wireless LLC</u>, 543 F. Supp.2d 1124, 1130

4    n.5 (N.D. Cal. 2008), the plaintiff would have had to close his account in order to

5    reject the arbitration provision.  Under those circumstances, the Court found the opt-

6    out right did not negate a funding of unconscionability.  That is not the fact here.

7        <u>Gentry v. Superior Ct.</u>, 42 Cal.4th 443 (2007) is similarly distinguishable.

8    The Court's decision largely turned on the fact that notwithstanding an opt-out right,

9    the employer pressured the employee into signing the arbitration agreement.

10   Among other things, the employer included a standard arbitration clause in the

11   agreement, but went on to provide employees with a "markedly one-sided"

12   handbook touting "the virtues of arbitration."  <u>Id</u>. at 470  The Court also noted that

13   the employer was "in a position to pressure employees to choose its favored option"

14   due to its relationship with its employees.  <u>Id</u>. at 472.  The present case does not

15   concern the employer-employee relationship and there are no allegations that the

16   Bank was even in any position to pressure Plaintiff.  <u>See</u> <u>Smith v. Americredit Fin.</u>

17   <u>Serv.</u>, No. 09-1076, 2009 WL 4895280, at *2-3 (S.D. Cal. Dec. 11, 2009)

18   (distinguishing <u>Gentry</u>:  "<u>Gentry</u> involved a class action waiver in an employment

19   agreement").

20       Second, the Arbitration Provision requires the Bank to pay both Plaintiff's

21   "reasonable attorneys' and expert witness fees."  Arbitration Provision at ¶ 8.  This

22   provision completely negates Plaintiff's argument that she cannot obtain or afford

23   an attorney willing to prosecute an individual arbitration.  <u>See</u>, <u>e.g.</u>, <u>Johnson v. West</u>

24   <u>Suburban Bank</u>, 225 F.3d 366, 374 (3d Cir. 2000), <u>cert</u>. denied, 531 U.S. 1145

25   (2001); <u>Jenkins v. First Am. Cash Advance of Ga., Inc.</u>, 400 F.3d 868, 879 (11th Cir.

26   2005) (same), <u>cert</u>. <u>denied</u>, 126 S. Ct. 1457 (2006); <u>Gulley</u>, <u>supra</u> (same).

27

28

Relying on the attorney's fee provision of the arbitration provision in the Agreement, Plaintiff argues that she would have to pay her attorneys' and expert witness fees even if she prevailed in an arbitration.  See Plaintiff's Opp. at 19-20.  In advancing this argument, Plaintiff not only ignores the fact that the applicable attorneys' fee provision is that in the Arbitration Provision, but she conveniently omits the key language of the attorneys' fee provision from the Agreement which provides that each party is responsible for its own fees "unless applicable law and/or this Arbitration Provision and/or the Agreement gives a party the right to receive any of those fees from the other party."  In fact, a litigant in this Court can only recover his or her attorneys' fees if the law sued under provides for the award of the same.  There can be no dispute that the statutes under which Plaintiff has filed suit entitle her to the award of attorneys' fees if she should prevail, she seeks such fees in her Complaint and she would be entitled to such in any arbitration if she prevails.

In any event, as Plaintiff begrudgingly admits in a footnote, the attorneys' fee provision of the Arbitration Provision, which is the operative fee provision, clearly provides for the award of attorneys' and expert witness fees if she prevails in arbitration.  See Arbitration Provision at ¶ 8; Plaintiff's Opp. at 20 n.9.  Moreover, it provides for the award of attorneys' and expert witness fees to the prevailing plaintiff even if the law under which the plaintiff is claiming relief does not expressly provide for the same.

Third, the Arbitration Provision provides that Plaintiff may pursue an individual claim in small claims court.  Arbitration Provision at ¶ 4.  Courts have repeatedly held that such a small claims court "carve out" supports a finding that a class action waiver is not unconscionable.  See e.g., Jenkins, 400 F.3d at 879; Howard v. Wells Fargo Minn., N.A., No. 06-2821, 2007 WL 2778664, at *5 (N.D. Ohio Sept. 21, 2007); Providian Nat'l Bank v. Screws, 894 So.2d 625 (Ala. 2003).

1   This is because a consumer, like Plaintiff, can easily bring an action in small claims

2   court with its simplified procedures and may even do so without counsel.  See id.

3       Fourth, Plaintiff also ignores the fact that the Arbitration Provision provides

4   that if she prevails in arbitration the "arbitrator shall award you at least $5,100 (plus

5   any fees and costs to which you are entitled)."  Arbitration Provision at ¶ 14.

6   Numerous courts have held that arbitration provisions with such "bump up"

7   provisions are not unconscionable because they incentivize consumers to pursue

8   their claims in arbitration.  See, e.g., Strawn v. AT&T Mobility, 593 F. Supp.2d 894,

9   896 & 900 n.6 (S.D. W.Va. 2009); Cruz v. Cingular Wireless, LLC, No. 2:07-cv-

10  714, 2008 WL 4279690, at *4 (M.D. Fla. Sept. 15, 2008); Davidson v. Cingular

11  Wireless, LLC, No. 06-133, 2007 WL 896349 (E.D. Ark. Mar. 23, 2007); Francis v.

12  AT&T Mobility, LLC, No. 07-CV-14921, 2009 WL 416063, at *9 (E.D. Mich. Feb.

13  18, 2009).[4]

14      Finally, the Arbitration Provision expressly grants the arbitrator the power to

15  award equitable, including injunctive relief.  See Arbitration Provision at ¶ 3.  State

16  law may not exempt claims for injunctive relief from arbitration.  See e.g.,

17  Southland Corp. v. Keating, 465 U.S. 1, 10 (1984); Arriaga v. Cross Country Bank,

18  163 F. Supp.2d 1189, 1198 (S.D. Cal. 2001).  Similarly, should the Court compel

19  arbitration, it cannot do so on a class-wide basis as Stolt-Nielsen S.A. v.

---

[4]     Laster v. AT&T Mobility LLC, 584 F.3d 849 (9th Cir. 2009), cert. granted sub nom. AT&T Mobility LLC v. Concepcion, 130 S. Ct. 3322 (2010), cited by Plaintiff, did invalidate an arbitration agreement which contained a "bump-up" provision.  However, the Ninth Circuit reached this conclusion because it believed that under the terms of the AT&T "bump-up" provision AT&T could avoid paying the enhanced award simply by paying the face value of the consumer's claim, which in that case was $30.22, once an arbitration was commenced.  584 F.3d at 855-36. In the present case, by contrast, the "bump-up" provision unambiguously provides for an award of at least $5,100 if the Bank fails "to provide you with the relief you request" prior to the institution of arbitration.  Arbitration Provision at ¶ 14.  Unlike in Laster, the Bank cannot avoid paying the enhanced award simply by paying the amount demanded once an arbitration is commenced.  Furthermore, in the present case, unlike in Laster, Plaintiff had the unfettered right to opt-out of the Arbitration Provision in the first place.

AnimalFeeds Int'l Corp., 130 S. Ct. 1758 (2010) expressly prohibits such absent the express agreement of the parties.

**C.    The Court Should Stay This Matter Pending A Decision Of The United States Supreme Court in Concepcion.**

In AT&T Mobility LLC v. Concepcion, 130 S. Ct. 3322 (2010), which was argued in November 2010, the Supreme Court agreed to review whether the FAA preempts California state court decisions holding that arbitration agreements between consumers and companies containing express class action waivers are unconscionable and unenforceable. Defendants respectfully request that if this Court concludes that the Arbitration Provision is unconscionable under state law so that it must address FAA preemption issues in deciding Defendants' Motion to Compel Arbitration, it stay these proceedings until the Supreme Court decides Concepcion so that it has the benefit of the Supreme Court's ruling. Indeed, a number of courts around the country have stayed actions dealing with the validity of arbitration provisions containing class action waivers pending a decision in Concepcion. See, e.g., Kaltwasser v. Cingular Wireless LLC, No. 07-0411, 2010 WL 2557379 (N.D. Cal. June 21, 2010).

## III.    CONCLUSION

For the reasons stated herein, Defendants' Motion to Compel Arbitration should be granted and the claims asserted against them should be stayed pending the completion of arbitration.

Respectfully Submitted,

DATED:  February 14, 2011

**s/ Daniel M. Benjamin**
DANIEL M. BENJAMIN
Ballard Spahr LLP
Attorneys for Defendants
Alliance Data Systems Corporation and World
Financial Network National Bank

OF COUNSEL:
Alan J. Kaplinsky
Martin C. Bryce, Jr.
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
215.665.8500
215.864.8999 (Fax)